## THE ATTORNEY GENERAL,

### v.

## THE PRESIDENT DIRECTORS AND COMPANY OF THE BANK OF CHENANGO.

Upon an application for an injunction against a bank, under the act of the twenty first day of April 1825, concerning fraudulent bankruptcies by incorporated companies, the proof may be summary.

An affidavit of the complainant, that he believes his statement of the acts or defaults of the bank, to be true, is not sufficient proof.

*1826.*
*10th January.*

*Injunctions against banks.*

THE seventeenth section of the act "to prevent fraudulent "bankruptcies by incorporated companies, to facilitate pro- "ceedings against them, and for other purposes," passed the twenty first day of April 1825, enacts; that "it shall and "may be lawful for the attorney general of this state, and it "is hereby made his duty, whenever any incorporated bank "is insolvent and unable to pay its debts, or has violated any "of the provisions of the act incorporating such company; "and also it shall be lawful for any creditor of any such "company to apply, by petition to the court of chancery, "setting forth the facts and the circumstances of the case; "and upon its being proved to such court, that such company "is insolvent, or that it has violated any of the provisions of "the act incorporating such company, or of any other act "which shall be binding on such company, it shall and may "be lawful for such court, to issue an injunction to restrain "such company and its officers from exercising any of the "privileges or franchises granted by the act incorporating "such company, or by any other act, and from collecting or "receiving any debts, and from paying out, or in any way "transferring any of the moneys or effects of such company, "until such court shall otherwise order; and it shall be law- "ful for such court to appoint a receiver of the property, "moneys and effects of said company, and to distribute the "same among the fair and honest creditors thereof."

This bill was filed by the attorney general. It stated, that the bank of Chenango having been incorporated by an act of the twenty first day of April 1818, commenced the

usual business of banking, and continued it for some time: that in July 1819, notes issued by the bank amounting to a large sum, were presented for payment, and payment was demanded; but the bank would not pay them: that while these notes remained unredeemed, the president and directors continued banking operations: that about this time, the bank gave public notice that it had stopped payment: that during this suspension of specie payments, the bank continued to discount notes, receive deposites and transact banking business; and that the directors also discounted for themselves, their own notes to a large amount: that in the autumn of 1819, the bank resumed specie payments: that the bank then employed brokers in the city of New York, to purchase its notes at a discount; whereby the notes were again brought into circulation: that about the first of June 1824, other notes of the bank of a large amount, were presented for payment; that the bank refused or neglected to make payment; and that while these notes remained unpaid, the bank continued its business: that in many other instances, in June 1825, the notes of the bank were presented for payment; and payment was refused or evaded: that since the act of the twenty first day of April 1825, the bank has discounted and received notes in payment of instalments of stock of the bank required to be paid in: that all these various transactions are violations of the act incorporating the bank, or the act of the twenty first day of April 1825; and that many of them are violations of both those laws: that an information of the nature of a quo warranto, has been filed in the supreme court, against the bank, for the purpose of annulling its charter; which suit is depending: and that the bank still continues to issue its notes, and transact banking business.—— The bill prayed an injunction, to restrain the bank and its officers from receiving any debts, from paying or transferring any moneys or effects of the bank, and from exercising any of the privileges granted by the act of incorporation; and also prayed, that a receiver might be appointed.

This bill was filed on the thirteenth day of December 1825. Subjoined to this bill, was an affidavit of the attorney general; by which he stated, that the matters contained in the

1826.

ATTORNEY GENERAL
v.
BANK OF CHENANGO.

bill were true, so far as they related to his own acts; and
that he believed them to be true, so far as they related to the
acts of others.

On filing the bill, the Chancellor directed, that notice
should be given to the defendants, to show cause why an in-
junction should not issue, according to its prayer. The de-
fendants appeared to show cause; and the motion for an in-
junction was now fully argued by MR. TALCOTT the attorney
general, in support of the application, and MR. OAKLEY
and MR. BUTLER against it.

The answer of the defendants to the bill, was read, in op-
position to this motion. They denied some parts of the bill;
they admitted some of the statements of the attorney general,
with explanations; and claiming an exemption from answer-
ing in respect to any matter which might subject the bank to
a forfeiture, the defendants made no answer to many important
allegations of the bill. The Court held, that the answer had
not admitted the matters stated in the bill, so far as to war-
rant an injunction upon the ground of admitted facts; and
that it was necessary to determine, whether the injunction
ought to be issued, upon the proof before the court, indepen-
dently of the answer. The only proof was the attorney gen-
eral's affidavit before mentioned.

THE CHANCELLOR. This application must be consider-
ed as founded altogether, on the seventeenth section of the
statute of the twenty first day of April 1825. The general
jurisdiction of this court as a court of equity, extends not to
this case. 2 Johns. ch. 371. and the late case of the attorney
general v. the Bank of Niagara, in this court. The power
which the court is now moved to exert, is the new power con-
ferred by this act of the legislature.

By this statute, the attorney general or any creditor of an
incorporated bank which is insolvent, may apply to this court,
setting forth the facts and circumstances of the case; and
upon proof to the court, that such bank is insolvent, or has vi-
olated any provision of law, the court may issue an injunction
to restrain the bank and its officers from exercising any of
their privileges.

The attorney general states on oath, that the matters con-
tained in this bill, so far as they relate to his own acts, are
true, and that he believes them to be true, so far as they re-
late to the acts of others. Is this affidavit sufficient proof,
upon which the court ought to issue an injunction?

The attorney general having had no participation or con-
cern in the acts and defaults of this bank stated in the bill;
and no one of those facts being alleged to rest in his person-
al knowledge; his affidavit proves only, that he believes the
statements which he has made, concerning the acts of this
bank and its directors, to be true.

Before an injunction can issue under this statute, the court
must determine, that the bank is insolvent, or has violated
some provision of law. Such a decision followed by an in-
junction, is in effect, a dissolution of the corporation. The
injunction may indeed, be discharged; but while it remains
in force, it is equivalent to the final judgment of forfeiture
and ouster, which courts of law do not pronounce, until a
formal and full investigation of the cause has taken place.
It is therefore, highly reasonable and just, that such an in-
junction shall not issue, until it is proved, that the bank is
insolvent, or has violated some law. The statute requires,
not only that the facts and circumstances shall be set forth,
but also, that it shall be proved to the court, that insolvency
exists, or violation of law has taken place. Some proof must
be given.

The statute requires proof; but it also contemplates sum-
mary proceedings: and it does not require, that the facts al-
leged by the attorney general or a creditor, should appear by
the admission of the defendants, or by proofs taken in full
form, after the cause is at issue. The proof to be used
in support of an application for such an injunction, may
be taken, summarily; but all proof in courts of justice, is
subject to the established rules of law and reason, concerning
evidence.

In ordinary cases, the oath of a complainant verifying his
bill, is a sufficient foundation for an injunction. But the nar-
ration of a complainant most frequently, consists wholly or
in part, of his own acts, or facts known to himself: and in-

junctions granted at the commencement of a suit, are generally, to prevent some particular act or injury, which by delay, would be irreparable. The injunction authorized by this law, is rather of the nature of those final injunctions, which are decreed at the hearing and termination of a suit.

If a creditor of this bank were the complainant in this suit, his affidavit not professing any personal knowledge and stating nothing more than his information and belief of the truth of the bill, would be insufficient, as proof under this statute.

Here, the attorney general having no personal knowledge of the matters of his bill, has not stated any one of the acts of this bank or its directors, as known to himself; but having information which he believes to be true, he has stated the case, according to his belief. In presenting the case to the court, he has done his duty; but the information which he has received from others, though believed to be true by him, is not proof. His official statement of matters not known to himself, but believed by him to be true, must be received with high respect; and it must have the weight of probable cause. But probable cause is not sufficient, in this case; in which, the statute requires proof, as the foundation of this penal proceeding. It is no disrespect to the attorney general or his office, to say, that his belief does not afford the proof which this statute requires.

In such cases, it can not be difficult, to obtain proof. They who have knowledge and give information of the misdeeds of a bank, can also, give testimony.

The case stated by this bill, consists of the acts of the bank and its directors. My opinion is, that the affidavit of the attorney general, that he believes his statement of those acts to be true, is not sufficient proof, under the statute which requires proof that the bank is insolvent or has violated the laws.

This decision renders it unnecessary, to examine other questions, which have been argued.

As this application is now refused, merely for deficiency of proof, it may be renewed at any time, when the attorney general shall be able to offer farther proof.